**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDGAR DEL AGUILA and JONATHAN CENTENO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NEWMARK SOLUTIONS CORP, and WILFREDO RODRIGUEZ CRUS, in his individual and professional capacity <br><br> Defendants. | Civil Action No. 1:19-cv-7372 <br><br> **CLASS & COLLECTIVE ACTION COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

Plaintiffs Edgar Del Aguila and Jonathan Centeno (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, by and through their attorneys, The Law Office of Christopher Q. Davis, PLLC, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF ACTION

1.     Plaintiffs are former laborers who worked for Defendants on New York City construction sites pursuant to contracts with the New York City Department of Design and Construction (the "DDC Contracts") as well as other non-public contracts. For their work, Plaintiffs were either not paid wages of any kind for hours worked in excess of forty (40) per week or paid at straight-time rates for all hours worked, and were also not paid the prevailing rate of wages or supplemental benefits for their work on public works projects including DCC Contracts.

2.     Plaintiffs bring this action to recover unpaid overtime premium pay owed to them and the putative Collective and Class pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

3.     Plaintiffs also seek to recover unpaid prevailing wages, daily overtime and supplemental benefits which they and the members of the putative Class were entitled to receive for work, including weekend and evening work, they performed pursuant to contracts entered into between Defendants and public entities, including but not limited to, the New York City Department of Design and Construction.

4.     Plaintiffs also bring this action for Defendants' failure to provide wage notices and wage statements pursuant to the NYLL and the supporting regulations and because Defendants unlawfully made deductions from wages for costs of required trainings in violation of NYLL.

5.     Plaintiffs bring their FLSA claim on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all employees of Defendants working as construction laborers.

## JURISDICTION AND VENUE

6.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiffs:**

9.     Individual and Representative Plaintiff Edgar Del Aguila ("Aguila") is former construction laboror employed by Defendants and was, at all relevant times, and adult individual

residing in Bronx County, New York.

10.     Individual and Representative Plaintiff Jonathan Centeno ("Centeno") is former construction laboror employed by Defendants and was, at all relevant times, and adult individual residing in Bronx County, New York.

**Defendants**:

11.     Upon information and belief, Defendant Newmark Solutions Corp. ("Newmark Solutions") is an active New York corporation with headquarters located at 67-53 Woodhaven Blvd, Suite 108, Rego Park, NY 11374.

12.     At all relevant times, Defendant Newmark Solutions has been and continues to be an employer engaged in interstate commerence and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

13.     Upon information and belief, at all relevant times, Defendant Newmark Solutions had gross revenues in excess of $500,000.00.

14.     Upon information and belief, Defendant Newmark Solutions is, and at all relevant times was, a construction company that provided commercial and private construction services including but not limited to, masonry restoration, waterproofing, cladding metal, concrete work, welding, framing, taping, painting, all aspects of interior renovations, plaza reconstruction, landmark preservation, exterior caulking and sealants.

15.     Defendant Wilfredo Rodriguez Cruz ("Cruz") is listed as the Chief Executive Officer and Registered Agent of Newmark Solutions Corp in corporate filings with the New York State Department of State, Division of Corporations.

16.     Upon information and belief, Defendant Cruz is the owner and operator of Newmark Solutions Corp., and is own of the ten (1) largest sharehlders of Defendant Newmark

Solutions.

17.     Upon information and belief, Defendant Cruz is, and was at all relevant times, responsible for seting Newmark Solutions' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Cruz was in charge of determining the companies' policies with respect to payroll, scheduling, and otherwise in charge of running the day-to-day operations of the business of Newmark Solutions.

18.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Collective and Class Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

19.     Defendant Cruz participated in the day-to-day operations of Newmark Solutions and acted intentionally and maliciously in his direction and control of Plaintiffs and Newmark Solutions' other similarly situated employees and is an "employer" pursuant to NYLL and all the regulations thereunder, and is jointly and serverally liabile with Defendant Newmark.

20.     All actions and omissions described in this complaint were made by Defendants directly or thorugh their supervisory employees and agents.

## COLLECTIVE ACTION ALLEGATIONS

21.     Pursuant to 29 U.S.C. § 207, Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time three years prior to filing the Complaint through the entry of judgement in this case (the "Collective Action Period") who worked as construction laborers, laboring foreman, and/or laborers in general (the "Collective Action Members").

22.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action members are similarly situated, in that they were all subjected to Defendants' illegal policies, including but not limited to, failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiffs and the Collective

Action members did not receive the legally required overtime premium payments for all hours worked in excess of forty (40) hours per week.

23.     Plaintiffs and the Collective Action members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## **CLASS ACTION ALLEGATIONS**

24.     Pursuant to the NYLL and the New York common law, Plaintiffs bring their Second through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time six year prior to the filing of this Complaint through the entry of judgment in this case (the Class Period") who worked as as construction laborers, laboring foreman, and/or laborers in general (the "Class Members").

25.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of the Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

26.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

27.     Upon information and belief, throughout the Class Period there are in excess of forty (40) Class Members.

28.     Common questions of law and fact exist as to all Class Members and such questions predominate over any questions solely affecting individual Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a. whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c. whether Defendants failed to pay overtime wages to Plaintiffs and the Class Members for all hours worked over forty (40) in a given week;

d. whether Defendants breached contracts with local, state, and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

e. whether Defendants breached contracts with local, state, and/or federal governmental entities by failing and/or refusing to pay Plaintiffs and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

f. whether Defendants breached contracts with local, state, and/or federal governmental entities by failing and/or refusing to pay Plaintiffs and the Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

g. whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs;

h. whether Defendants failed to provide Plaintiffs and Class Members with proper wage notices and wage statements;

i. whether Defendants' took unlawful deductions, either directly or by separate transaction, from Plaintiffs and the Class Members' pay;

j. whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

k. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

29. <u>Plaintiffs' claims are typical of the Class Members' claims.</u> Plaintiffs, like all Class Members, are construction employees who worked for Defendants pursuant to their corporate policies. The Class Representatives, like all Class Members, were, *inter alia*, not paid overtime wages for all hours worked over forty (40) in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed on New York City public works projects; had deductions taken from their wages for certain required workmanship courses; and were not provided with proper wage notice and wage statements. If Defendants are liable to the Class Representatives for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

30. <u>The Class Representatives and their Counsel will fairly and adequately represent the Class.</u> There are no conflicts between Plaintiffs and the Class Members, and the Class Representatives bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

31. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants are sophisticated parties with substantial resources. The Individual Plaintiffs and Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against the Defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### A. Defendant Newmark Solutions

33.     At all relevant times, Defendant Newmark Solutions Corp. has been in the construction business.

34.     Upon information and belief, Newmark Solutions Corp. entered into contracts as prime and/or sub-contractors that required Plaintiffs and the Class Members to be paid prevailing wages for work performed on New York City public works projects.

35.     Upon information and belief Defendants hired Plaintiffs and the Collective Action Memebers and Class Members to work as construction laborers, laboring foreman and/or general laborers (referred to herein as "Laborers") at both New York City public work sites as well as other non-public work sites.

### B. The Public Works Contracts

36.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with public agencies to provide construction work at New York City public works projects, or with prime contractors not currently known, to furnish

labor, material and equipment to perform work at New York City public works projects (the "Public Works Contracts").

37.     Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiffs and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Defendants' failure to pay Plaintiffs proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

38.     As employees of Defendants who were assigned to work on Defendants' publicly-financed projects, Plaintiffs and the Class Members were intended third-party beneficiaries of Defendants' Public Works Contracts.

39.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the plaintiff Class should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

40.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on New York City Public Works projects and, as such, the workers furnishing labor on New York City public works projects are the beneficiaries of that promise and the contracts entered into between Defendant and government agencies.

41. Upon information and belief, in furtherance of the Public Works Contracts entered into by the Defendants, Plaintiffs and other members of the putative Class performed various construction tasks, including, but not limited to, masonry, roof removal and installation, concrete pouring, formwork/carpentry, caulking, etc.

42. Upon information and belief, Plaintiffs should have been paid at the prevailing rate of wages (including supplemental benefits) of:

    a. July 1, 2013 through June 30, 2014: $39.67 plus $33.55 in supplemental benefits per hour;

    b. July 1, 2014 through June 30, 2015: $39.85 plus $34.88 in supplemental benefits per hour;[1]

    c. July 1, 2015 through June 30, 2016: $40.50 plus $36.53 in supplemental benefits per hour;

    d. July 1, 2016 through June 30, 2017: $41.00 plus $38.63 in supplemental benefits per hour;

    e. July 1, 2017 through June 30, 2018: $41.40 plus $40.63 in supplemental benefits per hour;

    f. July 1, 2018 through June 30, 2019: $42.00 plus $42.63 in supplemental benefits per hour;

    g. July 1, 2019 through June 30, 2020: $42.65 plus $44.48 in supplemental benefits per hour.

## C. Plaintiffs' Work for Defendant

43. At all relevant times, Plaintiffs performed construction laborer work for Defendants

---

[1] The rates listed are those of a "Laborer" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules.

in New York City, New Jersey and Pennsylvania.

44.     **Plaintiff Del Aguila** worked for Defendant beginning in or around March 2015 through in or around February 2019, as a construction laborer and a laboring foreman,.

45.     Plaintiff Del Aguila's duties included loading and unloading building materials, scaffolding, cementing, demolition, removing debris, and assisting with operating heavy machinery.

46.     From in or around March 2015, Plaintiff Del Aguila began working as a laborer for Defendant at a worksite located in Mamaroneck, NY ("Mamaroneck") and at Jay Street Metrotech in downtown Brooklyn, NY ("Metrotech").

47.     From in or around March 2015 through in or around June 2015 Plaintiff Del Aguila worked from 7:00am to 3:30pm at Mamaroneck and then from 5:30pm to 11:30pm at Metrotech for approximately sixteen (16) hours per day five (5) days per week, Monday to Friday for a total of approximately seventy-five to eighty (75-80) hours per week.

48.     From in or around September 2015 through February 2019 Plaintiff Del Aguila worked from 7:00am to 3:30pm or 5:30pm to 11:30pm as a laborer, mechanic, and "laboring foreman" for Defendant at various worksites both Public Works Contracts and non-public contracts.

49.     Plaintiff Del Aguila worked for approximately eight to fourteen (8-14) hours per day five to six (5-6) days per week, Monday to Saturday for a total of approximately forty to eighty (40-80) hours per week.

50.     The worksites Plaintiff Del Aguila worked at included the following locations:

   a.   CVS store at 34th and 8th Ave, New York, NY;

   b.   540 Madison Avenue, New York, NY;

c.   Astor Place, New York, NY;

d.   Mount Sinai Hospital at 100 St and 5th Ave, New York, NY;

e.   Columbia University;

f.   New York University;

g.   30th Street and 10th Ave, New York, NY;

h.   St Regis Hotel;

i.   JFK Airport;

j.   Navy Yards;

k.   1 Alexander Street, Yonkers, NY;

l.   Jersey City Mall, Jersey City, NJ; and

m.   Prudential Building, Newark, NJ.

51.    From the start of Plaintiff Del Aguila's employment period to in or around September 2016 he was paid fourteen dollars ($14.00) per hour for his work performed for Defendants at the various worksites, regardless of whether it was a non-public or Public Works Contracts.

52.    From in or around September 2016 Plaintiff Del Aguila wages were increased to sixteen dollars ($16.00) per hour for his work performed for Defendants at the various worksites, regardless of whether it was a non-public or Public Works Contracts.

53.    Plaintiff Del Aguila's wages were increased beginning in or around August 2017 to eighteen dollars ($18.00) per hour for his work performed for Defendants at the various worksites, regardless of whether it was a non-public or Public Works Contracts.

54.     Plaintiff Del Aguila's wages were increased in or around January 2019 to twenty dollars ($20.00) per hour for his work performed for Defendants at the various worksites, regardless of whether it was a non-public or Public Works Contracts.

55.     Throughout Plaintiff Del Aguila's employment he did not receive correct supplementals benefits for his work on the various worksites under Public Works Contracts nor was he paid the required prevailing wage rates in effect at the time for work performed under Public Works Contracts.

56.     In or around January 2017 Plaintiff Del Aguila was injured while working for Defendants at one of the various worksites under Public Works Contracts.

57.     Because it was a job that required union workers, and Plaintiff Del Aguila was not unionized, he was sent home for the day and not given any compensation or worker's compensation to address the injury.

58.     From the start of Plaintiff Del Aguila's employment until in or around October 2016 he was paid in cash for his work performed for Defendants at the various worksites under Public Works Contracts.

59.     From in or around November 2016 until Plaintiff Del Aguila's departure from Defendants' employ in or around February 2019, he was paid in the form of a personal check from Defendant Newmark Solutions bank account for Plaintiff Del Aguila's work performed for Defendants at the various worksites both under Public Works Contracts and non-public contracts.

60.     Plaintiff Del Aguila was never provided a wage statement with any of his paychecks nor when he was paid cash.

61.     From in or around the beginning of Plaintiff Del Aguila's employment through the end of his employment, Plaintiff Del Aguila was paid for at most for eight (8) hours of work per day, regardless of whether the number of hours that he actually worked exceeded eight (8) hours.

62.     Plaintiff Del Aguila did not receive wages of any kind for hours worked in excess of forty (40) hours per week.

63.     Throughout his employment, Plaintiff Del Aguila did not receive any overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

64.     On several occasions throughout Plaintiff Del Aguila's employment period he complained to Defendants' on-site Project Manager Angel Ruiz and Office Manager Marisol Rodriguez about not receiving proper overtime pay or prevailing wages. Ms. Rodriguez responded that she "knew nothing about it" and Mr. Ruiz responded that Plaintiff Del Aguila "had to talk to Freddy", referring to Defendant Cruz.

65.     Throughout Plaintiff Del Aguila's employment, he was rarely, if ever, able to take a thirty (30) minute uninterrupted meal break. The only time Plaintiff Del Aguila was given a meal break was when there were union workers at the worksites as well.

66.     In fact, many times while working at the various worksites for Defendants, Plaintiff Del Aguila and other putative Class Members were instructed by supervisors to lie and say that they were union members to any anyone who asked on site.

67.     Plaintiff Del Aguila was also required to pay for courses to perform his job efficiently for Defendant.

68.     To perform his job as a "laboring foreman", Plaintiff Del Aguila was required to have a license. While Defendants upfronted the cost for the courses needed to obtain this license,

they then took unlawful deductions from Plaintiff Del Aguila's earned wages to reimburse themselves for the cost.

69.     On at least on 10 occasions (usually on Saturdays) Plaintiff Del Aguila was also required to go to Defendant Cruz's home to perform landscaping work.

70.     Plaintiff Del Aguila was not paid overtime premiums of one and a half times his regularly hourly wage for hours worked perfoming required landscaping work at Defendant Cruz's home.

71.     While Defendants did not have a time clock at any of the various worksites, whether under Public Works Contracts or non-public works contracts, Plaintiff Del Aguila occasionally emailed Defendants the hours he and other Laborers worked each day.

72.     Although Plaintiff Del Aguila accurately recorded his hours, to the extent he was provided an opportunity to record such hours, he was not properly compensated for all hours that he worked.

73.     **Plaintiff Centeno** worked for Defendant beginning in or around November 2016, as a construction laborer before he was terminated in or around January 2018.

74.     Plaintiff Centeno duties included loading and unloading building materials, scaffolding, cementing, demolition, removing debris, and assisting with operating heavy machinery.

75.     From in or around November 2016 through his termination in or around January 2018, Plaintiff Centeno worked as a laborer for Defendant at various worksites located at:

    a.   Astor Place, New York, NY;

    b.   Columbia University, New York, NY; and

    c.   30th and 5th Ave, New York, NY.

76.     Throughout Plaintiff Centeno's employment period, Plaintiff Centeno typically worked eight to fourteen (8-14) hours per day five (5) days per week from Monday through Friday, for a total of approximately forty to sixty (40-60) hours per week.

77.     From the start of Plaintiff Centeno's employment period to in or around August 2017 he was paid fifteen dollars ($15.00) per hour for his work performed for Defendant at the various worksites under Public Works Contracts and non-public worksites.

78.     From in or around August 2017 Plaintiff Centeno through the end of his employment, he was paid fifteen dollars and fifty cents ($15.50) per hour per hour for his work performed for Defendant at the various worksites under Public Works Contracts and non-public worksites.

79.     Plaintiff Centeno typically worked from 7:00am and 5:00pm and was notified each day via text message what his hours would be for the next day.

80.     Throughout Centeno's employment, Plaintiff Centeno did not receive correct supplementals benefits for his work on the various worksites under Public Works Contracts nor was he paid the required prevailing wage rates in effect at the time.

81.     From in or around the beginning of Plaintiff Centeno's employment through the end of his employment, Plaintiff Centeno was paid for eight (8) hours of work per day, regardless of the number of hours that he actually worked.

82.     Plaintiff Centeno did not receive wages of any kind for hours worked in excess of forty (40) hours per week.

83.     Throughout his employment, Plaintiff Centeno did not receive any overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

84.     For the first week of Plaintiff Centeno's employment with Defendant he was paid in cash.

85.     Thereafter, all weekly payments were made via a personal check from the Defendants.

86.     Throughout Centeno's employment, Plaintiff Centeno did not receive any wage statements with his pay, both when he was paid in cash and by check.

87.     While Plaintiff Centeno attempted to keep records of his hours worked for Defendants there was no formal time clock present at any of the sites that he worked at for Defendants.

88.     On one Saturday Plaintiff Centeno was required to perform landscaping work for Defendant Owner Cruz's home.

89.     Plaintiff Centeno performed mulching, lawn care, and pool cleaning during an eight (8) hour period for Cruz.

90.     Plaintiff Centeno was compensated for only eight hours at his hourly rate of $15.50, he was not compensated time and a half, despite working more than 40 hours.

91.     At all relevant times. Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

92.     Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regular hourly rate for hours worked in excess of forty (40) per week was a corporate policy that applied to all Laborers employed by the Defendants.

93.     Defendants' failure to pay the prevailing wage was a corporate policy that applied to all Laborers employed by the Defendants.

94.     Defendants' failure to provide wage notices and wage statements was a corporate policy that applied to all Laborers employed by the Defendants.

95.     Defendants' unlawful deductions from wages was a corporate policy that applied to all Laborers employed by the Defendants

96.     Upon information and belief, during the period of time for which Plaintiffs and the members of the putative Class performed work on various worksites under Public Works Contracts, Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits to which Plaintiffs and other members of the putative Class were entitled to receive.

97.     Notwithstanding the fact that Plaintiffs and other members of the putative Class sometimes worked in excess of eight (8) hours a day and/or more than forty (40) hours in a week, Defendants failed to pay these individuals daily overtime or the prevailing wages and supplemental benefits required by applicable prevailing wage schedules.

98.     Defendants not only failed to provide Plaintiffs and their other similarly situated employees with proper wage notices at the time of hire but also failed to provide accurate wage statements for with every payment of wages pursuant to the NYLL.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

99.     Plaintiffs on behalf of themselves and the FLSA Collective, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

100.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et. seq., and the supporting federal regulations, apply to Defendants and protect the Plaintiffs, and the FLSA Collective.

101.     Defendanst have failed to pay the Plaintiffs and the FLSA Collective time and one-half their regular rate of pay for all hours they worked in excess of forty (40) hours in a work week.

102.     As a result of Defendants' violations of the FLSA, the Plaintiffs and the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

103.     Defendants' unlawful conduct, as descried in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made any good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

104.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 et seq.

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

105.     The Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

106.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect the Plaintiffs and the Class Members.

107.     Defendants have failed to pay the Plaintiffs and the Class Members the proper overtime wages to which they are entitled under the NYLL.

108.     Defendants have failed to pay the Plaintiffs and the Class Members one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per work week.

109. Defendants knew or should have known that they failed to pay the Plaintiffs and the Class Members overtime wages for hours worked in excess of forty (40) per week and thus willfully violated the NYLL, Article 19, §§ 650 et seq.

110. Due to Defendants' violations of the NYLL, the Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgement and post-judgement interest.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

111. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

112. Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and the employees performing work pursuant to such contracts.

113. Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiffs and the other employees performing work pursuant to such contracts.

114. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

115. Defendants' failure to pay Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects

constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

116.    As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled in The Alternative)**

117.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

118.    Based on Defendants' failure to pay Plaintiffs the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs.

119.    Equity and good conscience require that Defendants pay restitution to Plaintiffs.

120.    Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to the Public Works Contracts.

121.    Plaintiffs provided valuable services to Defendants performing prevailing wage jobs for which Plaintiffs expected compensation.

122.    Defendants knowingly accepted such services yet failed to pay Plaintiffs the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

123.    As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

124.    As a result of Defendants' failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from Defendant under New York's common law of quantum meruit.

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS

125.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

126.    At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Class Member within the meaning of the NYLL, §§ 2 and 651.

127.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, §195, on the date of hire and wage increases, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, §191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

128.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, up to a total of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq*., reasonable

attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS

129.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

130.     Defendant has willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing, among other things, Plaintiffs' straight time rate of pay, overtime rate or rates of pay if applicable, deductions from pay, and an accurate count of the number of hours worked, including overtime hours worked if applicable.

131.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant one hundred dollars ($100.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL DEDUCTIONS

132.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every above-referenced allegation as if fully set forth herein.

133.     During the Class Period, Defendants unlawfully made deductions from the wages of Plaintiffs and the Class Members for, inter alia, required trainings, in violation of the NYLL § 193.

134.     Defendants' unlawful deductions from the wages of the Plaintiffs and the Class Members were willful within the meaning of the NYLL § 663.

135.     Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants all unlawful wage deductions, together with liquidated damages, as well as attorneys' fees and costs, and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

(a) Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

(b) Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

(c) An order tolling the statute of limitations;

(d) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

(e) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendant, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(f) An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL, and supporting regulations;

(g) An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL and supporting regulations;

(h) Fifty dollars ($50.00) per Plaintiff and each Class Member for each workweek that the violations of the wage notice provision of the NYLL, Article 6 § 195 occurred or continue to occur, up to a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the NYLL Class Members as provided for by NYLL, Article 6 § 198(1-b);

(i) One Hundred dollars ($100.00) per Plaintiff and each Class Member for each workweek that the violations of the wage statement provision of the NYLL, Article 6 § 195 occurred or continue to occur, up to a total of twenty-five hundred dollars ($2,500.00) per Plaintiff and each Class Member as provided for by NYLL, Article 6 §198(1-d);

(j) An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiffs and the Class;

(k) An award of monetary damages to be proven at trial for all unlawful wage deductions owed to Plaintiffs and the Class;

(l) An award of prejudgment and post judgment interest;

(m) An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(n) Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the Complaint.

Dated: August 7, 2019
New York, New York

Respectfully submitted,

_____
Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
225 Broadway, Suite 1803
New York, NY 10007
646-430-7931 (direct)
646-430-7930 (main)
646-349-2504 (fax)